# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2019 Term**

_____

**No. 18-0841**

_____

**FILED**

**June 5, 2019**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA ex rel. WEST VIRGINIA UNIVERSITY HOSPITALS, INC., AND WEST VIRGINIA UNITED HEALTH SYSTEM, INC.,**
Petitioners

**v.**

**THE HONORABLE PHILLIP D. GAUJOT, JUDGE OF THE CIRCUIT COURT OF MONONGALIA COUNTY, CHRISTOPHER THOMACK, AND JOSEPH MICHAEL JENKINS,**
Respondents

_____

**ORIGINAL PROCEEDING IN PROHIBITION**

**WRIT GRANTED AS MOULDED**

_____

**Submitted: February 5, 2019**
**Filed: June 5, 2019**

Marc E. Williams, Esq.
Alexander L. Turner, Esq.
Christopher D. Smith, Esq.
Nelson Mullins Riley & Scarborough LLP
Huntington, West Virginia

Christine S. Vaglienti, Esq.
West Virginia University Hospitals, Inc.
Morgantown, West Virginia

**Counsel for the Petitioners**

David E. Goddard, Esq.
Edmund L. Wagoner, Esq.
Goddard & Wagoner
Clarksburg, West Virginia

Christopher J. Regan, Esq.
Laura P. Pollard, Esq.
Bordas & Bordas PLLC
Wheeling, West Virginia

David J. Romano, Esq.
Jennifer L. Finch, Esq.

**Romano Law Offices**
**Clarksburg, West Virginia**

**Counsel for Christopher Thomack and**
**Joseph Michael Jenkins, on their own**
**behalf and on behalf of all similarly**
**situated persons consisting of a class of**
**aggrieved persons**

**JUSTICE ARMSTEAD delivered the Opinion of the Court.**

**CHIEF JUSTICE WALKER, deeming herself disqualified, did not participate.**

**JUSTICE WORKMAN, deeming herself disqualified, did not participate.**

**JUDGE REEDER, sitting by temporary assignment.**

**JUDGE REGER, sitting by temporary assignment.**

**SYLLABUS BY THE COURT**

1.      "A class action may only be certified if the trial court is satisfied, *after a thorough analysis*, that the prerequisites of Rule 23(a) of the *West Virginia Rules of Civil Procedure* have been satisfied."  Syl. Pt. 8 (in part), *State ex rel. Chemtall Inc. v. Madden*, 216 W. Va. 443, 607 S.E.2d 772 (2004) (italics added).

2.      For purposes of Rule 23(a)(2) of the *West Virginia Rules of Civil Procedure* [2017], "a 'question' 'common to the class' must be a *dispute*, either of fact or of law, *the resolution of which* will advance the determination of the class members' claims."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369, 131 S. Ct. 2541, 2562, 180 L. Ed. 2d 374 (2011) (Ginsburg concurring in part and dissenting in part) (emphasis added).

3.      For commonality to exist under Rule 23(a)(2) of the *West Virginia Rules of Civil Procedure* [2017], class members' "claims must depend upon a common contention[,]" and that contention "must be of such a nature that it is capable of classwide resolution[.]"  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).  In other words, the issue of law (or fact) in question must be one whose "*determination* . . . will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*. (emphasis added).

4. "When a circuit court is evaluating a motion for class certification under Rule 23 of the *West Virginia Rules of Civil Procedure* [1998], the dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met." Syl. Pt. 7, *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003).

5. Determining whether the requirements of Rule 23 of the *West Virginia Rules of Civil Procedure* [2017] have been met often involves, by necessity, some "coincidental" consideration of the merits. *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004).

6. "[C]lass determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff[]s['] cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (cleaned up).

7. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1195, 185 L. Ed. 2d 308 (2013).

8. When consideration of questions of merit is *essential* to a thorough analysis of whether the prerequisites of Rule 23 of the *West Virginia Rules of Civil*

*Procedure* [2017] for class certification are satisfied, failing to undertake such consideration is clear error and an abuse of discretion.

**Armstead, Justice:**

This case is before the Court on a petition for writ of prohibition. Respondent Phillip D. Gaujot, Judge of the Circuit Court of Monongalia County, certified a class action against Petitioners, West Virginia University Hospitals, Inc. ("**WVUH**"), and West Virginia United Health System, Inc. ("**WVUHS**" and, together with WVUH, the "**Hospitals**"). Judge Gaujot named Respondents Christopher Thomack and Joseph Michael Jenkins as lead plaintiffs. The Hospitals later moved to decertify the class, and Judge Gaujot denied their motion. The Hospitals believe that Judge Gaujot erred, and they ask this Court to prohibit him from conducting any further proceedings until he has vacated his order denying their motion to decertify the class.

Based on the record before us, the arguments of the parties, and the applicable law, we find that the circuit court exceeded its jurisdiction by failing to conduct a sufficiently thorough analysis of whether the commonality required for class certification under Rule 23 of the *West Virginia Rules of Civil Procedure* is present. Accordingly, we grant the writ of prohibition as moulded, vacate the circuit court's order denying the Hospitals' motion to decertify the class, and remand this case for further actions consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2012, Mr. Thomack and Mr. Jenkins were injured in separate accidents. They were treated at Ruby Memorial Hospital. Each hired an attorney to seek damages for his injuries, and each attorney requested copies of his client's medical records. Mr.

Thomack alleges that WVUHS charged his attorney $514.40 for his medical records. Mr. Jenkins says that WVUHS charged his attorney $656.80. WVUHS arrived at these fees by charging "40 cents per page" plus an additional $10.00 fee for "[p]rocessing." WVUHS charged by the page, though it provided the records as images on a computer disc.

Mr. Thomack and Mr. Jenkins believe that these fees were illegal. On January 18, 2013, Mr. Thomack sued WVUH in the Circuit Court of Monongalia County.[1] Later, on June 27, 2013, Mr. Jenkins sued WVUHS[2] in the Circuit Court of Harrison County. Each plaintiff sued individually and as the (would be) representative of a class of similarly situated persons. Their cases were subsequently consolidated in the Circuit Court of Monongalia County.

On or about January 9, 2014, after consolidation, Mr. Thomack and Mr. Jenkins filed a consolidated and amended class action complaint against the Hospitals in the Circuit Court of Monongalia County. The consolidated complaint's central allegation is that the Hospitals violated W. Va. Code § 16-29-2(a) [1999] by "charg[ing] Plaintiffs $0.40 'per page' for copies of their already existing medical records[.]"

In October 2013—before consolidation—Mr. Thomack moved for class certification under Rule 23. The Hospitals opposed the motion in a memorandum filed in March 2014, after consolidation. They argued that a "fact intensive, case-by-case analysis

---

[1] Mr. Thomack's case was removed to the United States District Court for the Northern District of West Virginia, but the case was remanded to the Circuit Court of Monongalia County in October 2013.

[2] Mr. Jenkins sued other parties as well, but those parties and his claims against them are not relevant to this case.

. . . will be required to determine whether the fees imposed by WVUH and paid by each class member were, in fact, reasonable or unreasonable." They supported this argument with an affidavit from Melissa Martin, WVUH's director of health information management and chief privacy officer. In her affidavit, Ms. Martin described a variety of "electronic and/or physical storage systems" that must be searched when WVUH responds to a records request.

Ms. Martin also described what happens after the records have been located. She reported that medical records "are extracted and copied into a production system[.]"[3] Then "a WVUH technician manually inspects the document bundle to ensure that the production complies with the scope of the request and that no images are duplicates or illegible." She explained that this inspection process "can be very time consuming" because mental health information enjoys special protection and may be embedded in other records. Because of this concern, employees must actually "*read* the medical records" (emphasis added). Once this inspection is complete, WVUH counts the number of images and invoices the person who requested them. When WVUH receives payment, it saves the assembled records to a computer disc and conducts a further inspection to ensure that the records have been properly saved to the disc.

---

[3] Paper records are produced as hard copies "or scanned into [an electronic storage system], then extracted from [the electronic storage system] and downloaded into a production system for electronic production." Electronic records that "cannot be extracted electronically" are either printed and produced as hard copies or produced electronically, using a similar process of printing, scanning, extracting, and downloading.

The parties argued the certification motion on March 31, 2014. Mr. Thomack and Mr. Jenkins emphasized the Hospitals' uniform charging practices and claimed the Hospitals were trying to "offset" their "search cost by charging 40 cents a page[.]" They proposed that an expert could determine the Hospitals' "actual cost" of producing medical records. In arguing this, Mr. Thomack and Mr. Jenkins seemed to assume that the Hospitals' actual cost could be determined on some basis—seemingly a "rate" per page—that would allow liability to be shown by a simple comparison with the Hospitals' fee per page. On their theory of the case, "whether or not [the Hospitals] are actually overcharging, that's a merits issue."

The Hospitals argued that commonality was "the crux of this case" and urged the circuit court to "look at . . . the kind of proof that's going to be necessary for [the class plaintiffs] to prevail." They conceded that "all" had been "charged 40 cents a page and a $10 search fee[,]" yet they believed that commonality remained absent. According to them, deciding the case would require "look[ing] at each individual request [for medical records] and determin[ing] under the circumstances for the records that have been produced and the charges that were made, is that reasonable[?]" These arguments suggested to the circuit court that the Hospitals had strayed "into the subject matter of the lawsuit[,]" and the court agreed with Mr. Thomack and Mr. Jenkins that, at the certification stage, there was no need for them to show that they could "prevail on the merits[.]"

On April 16, 2014, the circuit court entered an order certifying a class of:

All individuals who have requested copies of their medical records from [the Hospitals] . . . , and their related entities, at

4

any time during the five (5) years preceding the filing of this lawsuit, and who paid the fees charged by the [Hospitals] . . . , and their related entities, to obtain their medical records.

The court certified the class as to the claims raised in the consolidated complaint and noted that "the reasonableness of the forty (40) cents per page charged to patients" is "[t]he most significant issue" and one that "is common to every member of the class and dominates the litigation as a whole." The court also found "a common issue of fact" in "the uniform nature of Defendants' [pricing] policy[.]"

The order expressly dismissed the Hospitals' objections and factual claims, interpreting them as an argument about damages. According to the court, the Hospitals "argue that the Plaintiffs' claims will be subject to individualized inquiries, *as a result of the varying amounts charged* to each individual to produce medical records" (emphasis added). The Hospitals' assertion was wrong, according to the court, "because the claims are based on a readily identifiable, standard calculation of forty (40) cents per page." These individual showings, the court held, "address the *damages*, and do not affect the *underlying common issues regarding whether the charges are permissible* under the applicable statute" (emphasis added).[4]

---

[4] On June 25, 2014, the Hospitals challenged the circuit court's certification order in a petition for writ of prohibition filed with this Court. We entered a summary order refusing the petition on August 26, 2014. *State ex rel. W. Va. Univ. Hosp., Inc. v. Gaujot*, No. 14-0611 (Aug. 26, 2014).

The circuit court revised the class definition in a subsequent order entered on November 12, 2015. The court clarified that the term "individuals" included both "individual patients" and a "representative requesting records on behalf of the patient, if the patient could ultimately be held responsible to pay the cost[.]"[5]

In 2017, we issued two decisions[6] that, according to the Hospitals, undercut the circuit court's class certification decisions. The Hospitals moved to decertify the class, advancing a new argument that Mr. Jenkins[7] lacked standing because he had yet to reimburse his attorney for the cost of obtaining his medical records.[8] They also renewed their attack on commonality, arguing that establishing "liability under W. Va. Code §16-29-2 [would] require[] an individualized analysis of the amount WVUH charged each class member versus the amount [WVUH] actually expended to compile the class member's records."

Mr. Thomack and Mr. Jenkins responded that Mr. Jenkins had, indeed, "reimbursed his attorney" and that, for purposes of certification, standing on the part of a class representative is sufficient. Regarding commonality, they contended that each

---

[5] The circuit court also modified the window of time that determined membership in the class based on amendments to W. Va. Code §§16-29-1 and -2 that became effective on June 6, 2014.

[6] *State ex rel. Healthport Techs., LLC v. Stucky*, 239 W. Va. 239, 800 S.E.2d 506 (2017) (addressing standing); and *State ex rel. Erie Ins. Prop. & Cas. Co. v. Nibert*, No. 16-0884, 2017 WL 564160 (W. Va. Feb. 13, 2017) (memorandum decision) (addressing commonality).

[7] This argument did not apply to Mr. Thomack, because his deposition indicated that this cost was deducted from his personal injury settlement.

[8] The Hospitals further argued that the words "if the patient could ultimately be held responsible to pay the cost" made the class unascertainable.

6

member of the class had experienced "the same harm . . .—paying more for copies of their medical records than [the Hospitals] were permitted to charge" and that this harm "ar[ose] out of the same wrongful conduct—[the Hospitals'] systematic charging of a per-page amount, plus a maximum search fee, despite the actual costs incurred . . . in producing the requested copies." They reiterated that "[a]ny 'individualized' finding is simply the calculation of the extent to which the charges were excessive[.]"

The circuit court heard oral argument on December 13, 2017. The Hospitals captured the essence of this case when their attorney observed, "we, frankly, have a disagreement as to what that statute means[.]" He explained,

> Under the plaintiffs' theory, we're only allowed to recover the actual cost. So how do we determine that? We have to do an individualized assessment of what it took to pull the records from Mr. Thomack, the records from Mr. Jenkins, and how much it cost us to do that, and then compare that to what we charged them. . . .
>
> This is the precise type of individualized determination for liability purposes which is not allowed under the commonality requirement[.][9]

In response, Mr. Thomack and Mr. Jenkins accused the Hospitals of "argu[ing] the merits before we even get there" and challenged the Hospitals' right to demand individual proof when they had "charged a flat rate to everybody." Mr. Thomack

---

[9] The Hospitals also offered their own competing interpretation of W. Va. Code §16-29-2(a) [1999], which "is that . . . you can charge up to a certain thing and that's a safe harbor, and as long as you don't exceed the [sic] up to a certain cost in the statute, you're okay." The Hospitals do not appear, however, to have asked the circuit court to embrace their interpretation, and we take no position on whether it is or is not correct.

and Mr. Jenkins professed to have "experts that will . . . look at [the Hospitals'] system and say, I don't care how you did it, this would be the amount[.]"

The circuit court denied the Hospitals' motion to decertify the class in an order entered on February 23, 2018. In the order, the court seemed to agree that the Hospitals' uniform charging policy was "in direct violation of the" statute's directive "to only charge the reasonable amount incurred to reimburse [the Hospitals] for the production of the records." The Court again dismissed the Hospitals' concerns about the need for individualized proof of liability. "Any 'individualized' finding is simply the calculation of the *extent* to which the charges were excessive" (emphasis added). According to the court, every plaintiff "claimed the same damages . . . , which is the difference between the amount that he or she was charged for copies . . . [and] the amount that was incurred by Defendants to produce them."

The circuit court did, however, determine that the class definition should be further modified to "includ[e] attorneys who have requested and paid for medical records on behalf of their *patient* clients" (emphasis in original). Pursuant to this determination, the circuit court entered a further order on July 5, 2018 that identified the class as follows:

> Any person[] who, from January 18, 2008 until June 5, 2014,
>
> (1) requested in writing copies of patient medical records from [WVUH], including the individual patient and any person who was an authorized agent or authorized representative of the patient through legal representation; and
>
> (2) paid the fees charged by [WVUH] to obtain such requested medical records.

8

The Hospitals filed this petition for a writ of prohibition on October 1, 2018, challenging the circuit court's February 23, 2018 order refusing to decertify the class.[10] Mr. Thomack and Mr. Jenkins filed a "summary response" on October 31, 2018.[11]

## II. STANDARD OF REVIEW

Generally, "[t]his Court will review a circuit court's order granting or denying a motion for class certification pursuant to Rule 23 of the *West Virginia Rules of Civil Procedure* [1998] under an abuse of discretion standard." Syl. Pt. 1, *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003). However, the Hospitals are seeking a writ of prohibition,[12] and we have said that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court

---

[10] The Hospitals also challenge an August 9, 2018 order of the circuit court that refused to accord preclusive effect to the settlement order in *Guida v. Wierton Med. Ctr., Inc.*, No. 01-C-57 (Brooke Cty. Cir. Ct. Oct. 28, 2003). *Guida* required the Hospitals to charge "forty (40) cents per page, together with a fee not to exceed $10 per request" for the seven-year period from December 1, 2003, to December 1, 2010. *Id.* at 12. Because we grant the writ as moulded on other grounds, we need not consider whether the circuit court erred.

[11] In their response, and in an accompanying motion, Mr. Thomack and Mr. Jenkins begged "leave to submit full, substantive briefing" if this Court elected to hear oral argument on the writ petition. This request was improper. The *West Virginia Rules of Appellate Procedure* authorize respondents to file *either* the full response directed by Rule 16(g) or the summary response permitted by Rule 16(h). *Cf.* W. Va. R. App. P. 16(g) and (h) [2010]. Rule 16(h) is clear that a summary response is filed "[i]*nstead of* a response[.]" W. Va. R. App. P. 16(h) (emphasis added). Thus, when Mr. Thomack and Mr. Jenkins elected to file a summary response, they waived their right to file a full response.

[12] "'An order denying class action standing under Rule 23 of the *West Virginia Rules of Civil Procedure* may be appealed by the party who asserts such class standing.' Syllabus point 6, *Mitchem v. Melton*, 167 W.Va. 21, 277 S.E.2d 895 [1981]. Conversely, an order awarding class action standing is also reviewable, but only by writ of prohibition." Syl. Pt. 2, *McFoy v. Amerigas, Inc.*, 170 W. Va. 526, 295 S.E.2d 16 (1982).

9

has no jurisdiction or having such jurisdiction exceeds its legitimate powers." Syl. Pt. 1, *State ex rel. Healthport Techs., LLC v. Stucky*, 239 W. Va. 239, 800 S.E.2d 506 (2017) (cleaned up). When a petitioner claims that a circuit court has exceeded its powers, our test is:

> (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.

Syl. Pt. 4 (in part), *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996); *see also Rezulin*, 214 W. Va. at 62, 585 S.E.2d at 62. "These factors are general guidelines that serve as a useful starting point[.]" *Id.* While we need not find that all factors are present, we attach "substantial weight" to the factor that asks "whether the lower tribunal's order is clearly erroneous as a matter of law[.]" *Id.* With these considerations in mind, we turn to the Hospitals' petition.

### III. ANALYSIS

The Hospitals argue that the class lacks the features of commonality and ascertainability required by Rule 23 of the *West Virginia Rules of Civil Procedure*. They also contend that the class, as defined, includes people who lack standing to participate in the class action. The Hospitals assert that all five *Hoover* factors weigh in favor of granting their requested writ. Foremost, according to the Hospitals, is the fact that they "have no

10

other way of challenging the trial court's denial of their Motion to Decertify Class." We agree with the Hospitals that whether commonality exists for this class is "the crux of this case[.]" We proceed to consider that question now.

"Before certifying a class under Rule 23 of the *West Virginia Rules of Civil Procedure* [1998],[13] a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)—numerosity, *commonality*, typicality, and adequacy of representation[.]" Syl. Pt. 8 (in part), *Rezulin*, 214 W. Va. 52, 585 S.E.2d 52 (emphasis added).[14] Whether these prerequisites exist is a matter left to the circuit court's "sound discretion[,]" and we have said that "doubtful case[s] should be resolved in favor of allowing class certification." Syl. Pt. 5, *Rezulin*, 214 W. Va. 52, 585 S.E.2d 52 (cleaned up); and *Rezulin*, 214 W. Va. at 65, 585 S.E.2d at 65.

That does not mean, however, that certification determinations are perfunctory. The plaintiff or defendant who proposes certification bears the burden of proving that certification is warranted. Syl. Pt. 4, *Rezulin*, 214 W. Va. 52, 585 S.E.2d 52. The circuit court must give careful consideration to whether the party has met that burden. "A class action may only be certified if the trial court is satisfied, *after a thorough analysis*, that the prerequisites of Rule 23(a) of the *West Virginia Rules of Civil Procedure* have been

---

[13] We amended Rule 23 on March 8, 2017, while the consolidated action was pending. The amendment added subsection (f) (residual funds) and is not relevant to the parties' dispute. *In re: Adoption of Amendment to Rule 23, Class Actions, of the West Virginia Rules of Civil Procedure*, No. 16-Rules-18 (March 8, 2017).

[14] Additional prerequisites are listed in Rule 23(b). *Id.*; and W. Va. R. Civ. P. 23(b) [2017].

11

satisfied." Syl. Pt. 8 (in part), *State ex rel. Chemtall Inc. v. Madden*, 216 W. Va. 443, 607 S.E.2d 772 (2004) (italics added). "[F]ailure to conduct a thorough analysis . . . amounts to clear error." *Chemtall*, 216 W. Va. at 454, 607 S.E.2d at 783. It is also an abuse of discretion. *Brown v. Nucor Corp.*, 785 F.3d 895, 902 (4th Cir. 2015) ("A district court abuses its discretion when it materially misapplies the requirements of Rule 23."). The circuit court must approach certification decisions in a conscientious, careful, and methodical fashion.

As noted above, commonality is an essential criterion of class certification. We have observed that "[t]he 'commonality' requirement of Rule 23(a)(2) of the *West Virginia Rules of Civil Procedure* [1998] requires that the party seeking class certification show that 'there are questions of law or fact common to the class.'" Syl. Pt. 11 (in part), *Rezulin*, 214 W. Va. 52, 585 S.E.2d 52. "The threshold of 'commonality' is not high, and requires only that the resolution of common questions affect all or a substantial number of the class members." *Id.* "A common nucleus of operative fact or law is usually enough[.]" *Id.*

In this case, the circuit court found common questions of law and fact in the Hospitals' uniform practice of charging forty cents per page (or per image) for medical records. Mr. Thomack and Mr. Jenkins's case turns on the core allegation that the Hospitals' uniform charging practice violated W. Va. Code § 16-29-2(a) [1999]. At all relevant times, section 2(a) said that a health care provider:

> shall be reimbursed . . . for all reasonable expenses incurred in complying with this article: *Provided*, That the cost may not

12

exceed seventy-five cents per page for the copying of any record or records which have already been reduced to written form[,] and a search fee may not exceed ten dollars.

*Id*.

However, not everything that may be loosely called a "question of fact" is sufficient to meet Rule 23's "threshold" of commonality. Indeed, "a 'question' 'common to the class' must be a *dispute*, either of fact or of law, *the resolution of which* will advance the determination of the class members' claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369, 131 S. Ct. 2541, 2562, 180 L. Ed. 2d 374 (2011) (Ginsburg concurring in part and dissenting in part) (emphasis added).

Similarly, it is not enough for Mr. Thomack and Mr. Jenkins to allege that they and others like them are victims of the same statutory violation. For commonality to exist, class members' "claims must depend upon a common contention[,]" and that contention "must be of such a nature that it is capable of classwide resolution[.]" *State ex rel. Erie Ins. Prop. & Cas. Co. v. Nibert*, No. 16-0884, 2017 WL 564160, at *6 (W. Va. Feb. 13, 2017) (memorandum decision) (quoting *Wal-Mart*, 564 U.S. at 350, 131 S. Ct. at 2551, 180 L. Ed. 2d 374). In other words, the issue of law (or fact) in question must be one whose "*determination* . . . will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. (emphasis added). This is not a new doctrine. While a capacity to resolve "common questions" may be the "only" thing that commonality requires, commonality requires *at least* that much. Syl. Pt. 11 (in part), *Rezulin*, 214 W. Va. 52, 585 S.E.2d 52 ("The threshold of 'commonality' is not high, and requires *only that*

the *resolution* of common questions affect all or a substantial number of the class members." (emphasis added)).

In this case, the determination of commonality necessarily required a review of the alleged harm suffered by the plaintiffs. This, in turn, would require at least an initial review of the merits. "When a circuit court is evaluating a motion for class certification under Rule 23 of the *West Virginia Rules of Civil Procedure* [1998], the dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met." Syl. Pt. 7, *Rezulin*, 214 W. Va. 52, 585 S.E.2d 52. However, determining whether the requirements of Rule 23 of the *West Virginia Rules of Civil Procedure* [2017] have been met often involves, by necessity, some "coincidental" consideration of the merits. *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) ("The analysis under Rule 23 must focus on the requirements of the rule, and if findings made in connection with those requirements overlap findings that will have to be made on the merits, such overlap is only coincidental.") The United States Supreme Court has observed that "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff[]s['] cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (cleaned up). Our prior certification decisions bear that out. *See, e.g.*, *Chemtall*, 216 W. Va. at 455, 607 S.E.2d at 784; *Ways v. Imation Enterprises Corp.*, 214 W. Va. 305, 314, 589 S.E.2d 36, 45 (2003).

14

"Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1195, 185 L. Ed. 2d 308 (2013). We hold that when consideration of questions of merit is *essential* to a thorough analysis of whether the prerequisites of Rule 23 of the *West Virginia Rules of Civil Procedure* [2017] for class certification are satisfied, failing to undertake such consideration is clear error and an abuse of discretion.

Mr. Thomack and Mr. Jenkins believe—and the circuit court agreed with them—that the Hospitals' uniform charging practices violated W. Va. Code § 16-29-2(a) [1999]. They concede that some individualized proof may be necessary to determine damages, but they believe that the core issue of liability may be determined by aggregate proof. The Hospitals repeatedly challenged this assertion. On their reading of the statute, *individualized proof* will be necessary to determine not just damages but liability itself. According to them, each separate request for medical records will have to be examined to determine whether the Hospitals charged more than "all reasonable expenses incurred in complying with [the statute.]" *Id.* Whether each charge for medical records exceeded the Hospitals' actual "reasonable expenses incurred" raises questions that relate to both liability and, if liability is determined, the amount of the damages incurred. The statute is framed such that liability and damages are two sides of the same coin, and we fail to see how a plaintiff could prove *that* a charge exceeded actual expenses, thus, establishing

15

liability, without also proving *by how much* the charge exceeded actual expenses, and thereby establishing the amount of damages.

It may be, as the Hospitals contend, that the statute demands that "all reasonable expenses incurred" be determined on a per-request basis. While this is a question on the merits for the circuit court to determine, the Martin affidavit suggests that "all reasonable expenses incurred" to produce 1,000 pages (or images) of medical records for one person might be different from "all reasonable expenses incurred" to produce the same quantity of medical records for another person. In that case, a charge of $400[15] might be lawful for one request and unlawful for another. The fact that the Hospitals charged all class members by the page (or by the image) does not change the statute or the fact that the statute's terms define the boundary between lawful and unlawful charges.

These are questions that must be decided in the first instance by the circuit court. On the record before us, it does not appear that the circuit court has addressed the question of commonality with sufficient factual findings and conclusions to allow us to conclude that its certification decision and subsequent refusal to decertify the class were the product of "a thorough analysis[.]" Syl. Pt. 8 (in part), *Chemtall*, 216 W. Va. 443, 607 S.E.2d 772.

The Hospitals repeatedly challenged Mr. Thomack and Mr. Jenkins's claim that commonality could be found in the Hospitals' uniform charging practices and in the

---

[15] This would be the charge for 1,000 pages (or images) at forty cents per page.

16

Hospitals' alleged violation of W. Va. Code § 16-29-2(a) [1999]. Yet the circuit court persisted in finding commonality without ever truly addressing the Hospitals' arguments or indicating with clarity the rationale for such findings. Accordingly, and for the reasons set forth above, we grant the Hospitals' writ of prohibition and vacate the circuit court's order denying the Hospitals' motion to decertify the class.

Because we grant the writ as moulded and vacate the circuit court's order, we need not consider the Hospitals' other grounds for seeking a writ of prohibition.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the circuit court has exceeded its legitimate powers by certifying the class while failing to conduct a sufficiently thorough analysis of the case to determine whether the commonality required for class certification under Rule 23 of the *West Virginia Rules of Civil Procedure* is present. Upon remand, we urge the circuit court to determine whether the requirements of Rule 23, particularly as they relate to commonality, have been met and, if so, to craft a class definition consistent with such findings.[16]

---

[16] We would note some concerns about the circuit court's July 5, 2018 order defining a class of plaintiffs that includes attorneys who requested their clients' medical records and "paid the fees[.]" The order would appear to mean that an attorney who requests and pays for a client's medical records (at least until such time, if any, that the client reimburses the attorney) would personally be a member of the class and, therefore, a litigant in the action. If so, are the attorney's efforts for the attorney or the client? Such a scenario raises questions regarding ethical standards governing the attorney's role in the litigation. *See* W. Va. R. Prof. Conduct 1.8(i) [2015] ("A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is

Accordingly, the Hospitals' writ of prohibition is granted as moulded, the circuit court's order denying the Hospitals' motion to decertify the class is vacated, and this case is remanded for further actions consistent with this opinion.

Writ granted as moulded.

---

conducting for a client[.]"). We believe that the question of whether attorneys who pay for their clients' records should be included in any class should be given careful consideration if, after further proceedings below, the circuit court determines that Mr. Thomack and Mr. Jenkins's consolidated claims satisfy the commonality and other requirements of Rule 23.