No. 22-658, *State of West Virginia ex rel. West Virginia-American Water Co. v. The Honorable Carrie L. Webster, Judge of the Circuit Court of Kanawha County, West Virginia; et al.*

**FILED**

**June 6, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Armstead, Justice, dissenting:

I dissent from the majority opinion's ruling and would have granted Petitioner West Virginia-American Water Company's ("WVAWC") requested writ of prohibition. The water main break at the center of this case affected approximately 25,000 customers. It is undisputed that the impact of the water main break varied greatly from customer to customer.[1] Nevertheless, the circuit court certified the class "with respect to the overarching common issues of whether [WVAWC] is liable for breach of contract and negligence, and for actionable violation of its statutory duties under the West Virginia Code." Because Respondents' claims require individualized, specific assessments of the water main break's impact on each putative class member, class certification is not proper under Rule 23 of the West Virginia Rules of Civil Procedure. Therefore, I respectfully dissent from the majority opinion's ruling.

Our standard of review when considering a writ of prohibition is as follows:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) **whether the lower tribunal's order is clearly erroneous as a matter of law**; (4)

---

[1] Some customers were without any water service for three to seven days, while others only experienced boil water advisories or low water pressure.

1

whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996) (emphasis added). As explained below, I believe WVAWC has satisfied the third *Hoover* factor.[2]

---

[2] *Hoover* instructs that "all five factors need not be satisfied," and makes clear that "the third factor, the existence of clear error as a matter of law, should be given substantial weight." *Id.*, Syl. Pt 5, in part. In addition to satisfying the third factor, I believe WVAWC has also satisfied the second and fourth *Hoover* factors. The second *Hoover* factor directs us to determine whether WVAWC will be damaged or prejudiced in a way that is not correctable on appeal. An appeal is inadequate, and prohibition warranted, when "both parties would be compelled to go through an expensive, complex trial and appeal from a final judgment, and we determine there is a high likelihood of reversal on appeal." *State ex rel. Frazier v. Hrko*, 203 W. Va. 652, 658, 510 S.E.2d 486, 492 (1998). While WVAWC can argue that class certification was not proper in a direct appeal, it can only do this after going through an expensive, complex trial to determine liability, followed, potentially, by thousands of trials to determine individual damages. I think there is a high likelihood of reversal on appeal due to the fact that liability and damages require individualized, specific assessments of the water main break's impact on each putative class member. Therefore, because WVAWC "has no plain, speedy, and adequate remedy in the ordinary course of law," I would find that it has satisfied the second *Hoover* factor. *Id.*, 203 W. Va. at 658, 510 S.E.2d at 492.

Additionally, WVAWC can satisfy the fourth *Hoover* factor which requires consideration of "whether the lower tribunal's order is an oft repeated error." *Hoover*, Syl. Pt. 5, in part. This Court has addressed a number of recent cases involving challenges to circuit court orders granting class certification over the objection of defendants contending that commonality or predominance were not met. *See State ex rel. W. Va. Univ. Hosps., Inc. v. Gaujot*, No. 21-0737, 2022 WL 1222964 (W. Va. April 26, 2022); *State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020); *State ex*

(continued . . .)

This Court addressed class certification under Rule 23 in syllabus point eight of *In re West Virginia Rezulin Litigation*, 214 W. Va. 52, 585 S.E.2d 52 (2003):

> Before certifying a class under Rule 23 of the West Virginia Rules of Civil Procedure [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and has satisfied one of the three subdivisions of Rule 23(b). As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party.

*See also Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 525, 694 S.E.2d 815, 858 (2010). One of the three subdivisions contained in Rule 23(b) is predominance.

The determination of liability and damages in this case requires individualized, specific assessments of the water main break's impact on each putative class member. Because liability and damages cannot be determined without these individualized assessments, Respondents have not satisfied either predominance or commonality, both of which are required for class certification under Rule 23.

**A. Predominance**

For a class to be certified under Rule 23(b)(3), "questions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members[.]" W. Va. R. Civ. P. 23(b)(3). Whether common questions

_____

*rel. W. Va. Univ. Hosps., Inc. v. Gaujot*, 242 W. Va. 54, 829 S.E.2d 54 (2019). Because issues relating to commonality and predominance have frequently been addressed by this Court in a number of recent cases, I believe WVAWC has satisfied the fourth *Hoover* factor.

"predominate" over individual questions is an issue that requires "thorough analysis" and "includes (1) identifying the parties' claims . . . and their respective elements; (2) determining whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determining whether the common questions predominate." Syl. Pt. 7, in part, *State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020). Individual questions are those "where members of a proposed class will need to present evidence *that varies from member to member*[.]" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, 136 S. Ct. 1036, 1045 (2016) (internal citation and quotation omitted) (emphasis added). Common questions are those "where the same evidence will suffice for each member to make a prima facie showing [or] [where] the issue[s] [are] susceptible to generalized, class-wide proof." *Id.* This Court has previously determined that "circuit courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Syl. Pt. 7, in part, *Surnaik*.

## B. Commonality

This Court has held that

[t]he "commonality" requirement of Rule 23(a)(2) of the West Virginia Rules of Civil Procedure [2017] requires that the party seeking class certification show that "there are questions of law or fact common to the class." A common nucleus of operative fact or law is usually enough to satisfy the commonality requirement. The threshold of "commonality" is not high, and

4

requires only that the resolution of common questions affect all or a substantial number of the class members.

Syl. Pt. 11, *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52.

Additionally, in *State ex rel. West Virginia University Hospitals, Inc. v. Gaujot*, 242 W. Va. 54, 829 S.E.2d 54 (2019), this Court observed that "[f]or purposes of Rule 23(a)(2) of the West Virginia Rules of Civil Procedure [2017], a question common to the class must be a *dispute*, either of fact or of law, *the resolution of which* will advance the determination of the class members' claims." Syl. Pt. 2, in part (emphasis in original) (internal citation and quotation omitted). Furthermore, the Court in *Gaujot* held that

> [f]or commonality to exist under Rule 23(a)(2) of the West Virginia Rules of Civil Procedure [2017], class members' claims must depend upon a common contention[,] and that contention must be of such a nature that it is capable of classwide resolution[.] In other words, the issue of law (or fact) in question must be one whose *determination* . . . will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.*, Syl. Pt. 3, in part (emphasis in original) (internal citation and quotation omitted).

**C. Analysis**

Respondents three claims are as follows: (1) breach of contract for failure to maintain the plant and system in such condition as to furnish "safe, adequate and continuous service" as required by West Virginia Code of State Rules § 150-7-5.1.a (2011); (2) a statutory cause of action under West Virginia Code § 24-3-1, asserting a violation of the duty to maintain "adequate and suitable facilities"; and (3) common law negligence for WVAWC's failure to comply with its duty to maintain its plant and system.

5

The impact on each customer's water supply is necessary to establish liability under both C.S.R. § 150-7-5.1.a. and West Virginia Code § 24-3-1. First, C.S.R. § 150-7-5.1.a. provides: "Each utility shall at all times construct and maintain its entire plant and system in such condition that it will furnish safe, *adequate and continuous service*." (Emphasis added). Establishing whether a customer received "adequate and continuous service" requires a determination of how each individual customer was impacted by the water main break. This is a clear example of an "individual" question "where members of a proposed class will need to present evidence that varies from member to member[,]" that cannot be resolved in a class action. *Tyson Foods, Inc.*, 577 U.S. at 453, 136 S.Ct. at 1045.

Similarly, West Virginia Code § 24-3-1 provides, in part, that public utilities "shall establish and maintain adequate and suitable facilities, safety appliances or other suitable devices, and *shall perform such service* in respect thereto *as shall be reasonable*, safe *and sufficient* for the security *and convenience of the public*[.]" *Id.* (Emphasis added). I agree with WVAWC's argument that the language of this statute requires that a utility provide reasonable service to its customers. The circuit court's interpretation of liability under this statute as being separate from consideration of impact upon customer service disregards the plain language of the statute. For liability to exist, each customer must show that their service was reduced to a level less than reasonable. Thus, WVAWC's liability for failure to provide reasonable service under West Virginia Code § 24-3-1 cannot be determined without considering the specific impact the water main break had on each individual customer.

6

Additionally, each customer's damages will require individual assessments that vary greatly from customer to customer. The potential class could be very large because approximately 25,000 customers were affected by the water main break. Each customer could potentially have incurred different injuries from the water main break and should be required to present individualized proof of damages. Faced with the potential for thousands of individual damage trials, it is clear that the issue of damages is not common among the putative class members.

Because the impact on a customer's water supply is relevant to establishing liability under both C.S.R. § 150-7-5.1.a. and West Virginia Code § 24-3-1, and because the damage assessment for each customer must be conducted on an individual basis, Respondents have not satisfied either commonality or predominance which are required under Rule 23.

### D. Conclusion

Based on the foregoing, I believe that WVAWC has satisfied the third *Hoover* factor because common questions of law or fact do not predominate in this case where the issues of liability and damages require highly individualized determinations. Therefore, I would have granted WVAWC's requested writ of prohibition.