IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 22-658

_____

FILED

**June 6, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel. WEST VIRGINIA-AMERICAN
WATER COMPANY,
Petitioner,

v.

THE HONORABLE CARRIE L. WEBSTER, Judge of the Circuit Court of
Kanawha County, West Virginia; RICHARD JEFFRIES, individually
And on behalf of all others similarly situated; and
COLOURS BEAUTY SALON, LLC,
Respondents.

_____

Petition for a Writ of Prohibition

WRIT DENIED

_____

Submitted:  April 26, 2023
Filed:  June 6, 2023

Thomas J. Hurney, Jr., Esq.
Alexandra Kitts, Esq.
Blair E. Wessels, Esq.
JACKSON KELLY PLLC
Charleston, West Virginia
*and*
Kent Mayo, Esq.
BAKER BOTTS L.L.P.
Washington, D. C.
Counsel for Petitioner

Alex McLaughlin, Esq.
W. Stuart Calwell, Esq.
L. Dante' diTrapano, Esq.
CALWELL LUCE diTRAPANO,
PLLC
Charleston, West Virginia
*and*
Kevin W. Thompson, Esq.
THOMPSON BARNEY
Charleston, West Virginia

Marc E. Williams, Esq.
Jennifer W. Winkler, Esq.
NELSON MULLINS RILEY &
SCARBOROUGH LLP
Huntington, West Virginia
Counsel for Amici Curiae National
Association of Water Companies,
Edison Electric Institute, and American
Gas Association

Counsel for Respondents Richard
Jeffries and Colours Beauty Salon,
LLC

JUSTICE WOOTON delivered the Opinion of the Court.
JUSTICE ARMSTEAD dissents and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue.  Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."  Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.      "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1."  Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

i

3.	"Before certifying a class under Rule 23 of the *West Virginia Rules of Civil Procedure* [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and has satisfied one of the three subdivisions of Rule 23(b). As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party." Syl. Pt. 8, *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003), *holding modified by State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020).

4.	"When a class action certification is being sought pursuant to West Virginia Rule of Civil Procedure 23(b)(3), a class action may be certified only if the circuit court is satisfied, after a thorough analysis, that the predominance and superiority prerequisites of Rule 23(b)(3) have been satisfied. The thorough analysis of the predominance requirement of West Virginia Rule of Civil Procedure 23(b)(3) includes (1) identifying the parties' claims and defenses and their respective elements; (2) determining whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determining whether the common questions predominate. In addition, circuit courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. This

analysis must be placed in the written record of the case by including it in the circuit court's order regarding class certification." Syl. Pt. 7, *State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020).

5. "The 'commonality' requirement of Rule 23(a)(2) of the *West Virginia Rules of Civil Procedure* [1998] requires that the party seeking class certification show that 'there are questions of law or fact common to the class.' A common nucleus of operative fact or law is usually enough to satisfy the commonality requirement. The threshold of "commonality" is not high, and requires only that the resolution of common questions affect all or a substantial number of the class members." Syl. Pt. 11, *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003), *holding modified by State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020).

6. "The 'typicality' requirement of Rule 23(a)(3) of the *West Virginia Rules of Civil Procedure* [1998] requires that the 'claims or defenses of the representative parties [be] typical of the claims or defenses of the class.' A representative party's claim or defense is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. Rule 23(a)(3) only requires that the class representatives' claims be typical of the other class members' claims, not that the claims be identical. When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." Syl. Pt. 12, *In re W. Va. Rezulin*

*Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003), *holding modified by State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020).

WOOTON, Justice:

Petitioner West Virginia-American Water Company (hereinafter "WVAWC") seeks a writ of prohibition to preclude enforcement of the Circuit Court of Kanawha County's July 5, 2022, order certifying an "issues" class pursuant to West Virginia Rule of Civil Procedure 23(c)(4) ("Rule 23(c)(4)") in this putative class action involving a June 2015 water main break in Dunbar, West Virginia. The break and its repair resulted in two separate water service interruptions that caused outages, inadequate water pressure, and boil water advisories affecting approximately 25,000 WVAWC customers for a period of three to seven days. Putative class plaintiffs/respondents herein, Richard Jeffries and Colours Beauty Salon, LLC (hereinafter "respondents"), filed a complaint on behalf of the putative class, asserting claims for violation of statute, breach of contract, and common law negligence against WVAWC for its alleged failure to adequately maintain its facilities to prevent and/or mitigate the break.

Upon respondents' motion, the circuit court certified an "issues" class to determine "the overarching common issues" as to WVAWC's liability. In opposition, WVAWC argued that the determination of liability under the causes of action asserted by respondents necessarily requires individualized assessments of the "impact" of the water main break as to each customer, destroying the required elements of commonality, typicality, predominance, and superiority under West Virginia Rule of Civil Procedure 23 ("Rule 23"). However, the circuit court found that the specific impact on each class

1

member related to damages and was therefore severable from the underlying issue of whether WVAWC failed to maintain its facilities in such a manner as to comply with its statutory, contractual, and common law obligations to its customers.

After careful review of the parties' briefs,[1] their oral arguments, the appendix record, and the applicable law, we find that WVAWC has failed to demonstrate that the circuit court's class certification pursuant to Rule 23(c)(4) is clearly erroneous and therefore deny the requested writ of prohibition.

## I.     FACTS AND PROCEDURAL HISTORY

The underlying case involves a break in WVAWC's 36-inch diameter prestressed concrete cylinder pipe transmission main in Dunbar, West Virginia, which serves western Kanawha, eastern Putnam, eastern Mason, and northern Lincoln counties. The break was discovered on June 23, 2015 and affected water service to approximately 25,000 customers. On June 23, customers began to experience outages and water pressure issues; WVAWC issued a precautionary boil water advisory for customers west of Dunbar and advised those customers to limit non-essential water use. Service was restored on June 27, 2015, but further problems developed causing additional disruptions in service.

---

[1] The National Association of Water Companies, Edison Electric Institute, and American Gas Association were granted permission to file an amicus curiae brief in this matter in support of WVAWC. The Court acknowledges and expresses its appreciation for their contribution.

Another boil water advisory was issued on June 29, 2015, for customers who experienced low or no water pressure. Full water service was allegedly restored on July 1, 2015.

On June 2, 2017, the instant civil action was filed by respondents on behalf of the putative class of affected customers. Respondents alleged, inter alia, that WVAWC was aware that the main was unreliable and prone to breakage yet failed to replace the main or make feasible improvements, such as connecting to a neighboring system, adding larger capacity mains, or increasing treated water storage, to mitigate service disruptions in the event of a break. Respondents further alleged that, in 2011, the West Virginia Public Service Commission (hereinafter "PSC") issued an order requiring WVAWC to increase its "unacceptable" existing water main replacement rate, but WVAWC failed to do so.

The original complaint against WVAWC alleged 1) breach of contract for failure to supply "usable tap water or adequate water pressure" as required by West Virginia Code of State Rules § 150-7-4.1.e.4 (2011);[2] 2) breach of contract for failure to maintain the plant and system in such condition as to furnish "safe, adequate and continuous service" as required by West Virginia Code of State Rules § 150-7-5.1.a

---

[2] This regulation is now located at West Virginia Code of State Rules § 150-7-6.1.5.d (2023). However, in the order on appeal, the circuit court found that this claim had been abandoned and respondents apparently do not take issue with that finding. Accordingly, we do not address this regulation as pertains to the issues herein.

(2011)[3]; 3) a statutory cause of action for violation of the requirement found in West Virginia Code § 24-3-1 (1921) to maintain "adequate and suitable facilities"; and 4) common law negligence for WVAWC's failure to comply with its duty to maintain its plant and system.

Shortly after the action was filed, WVAWC moved the circuit court to refer respondents' complaint to the PSC under the "primary jurisdiction" doctrine.[4] WVAWC argued that the PSC exercised concurrent jurisdiction over the issues raised and had peculiar expertise to resolve certain issues. Specifically, WVAWC requested the court to "defer to the PSC the threshold determination of whether [WVAWC] breached its contract (or any applicable statutory or common law duty)[,]" whether WVAWC's "conduct constituted a breach of the PSC regulations and approved tariff that make up the contract at issue[,]" and whether "[its] actions were reasonable under [W. Va. Code] § 24-3-1, consistent with the duty of care for a water utility." The circuit court denied the motion and WVAWC sought no relief from this ruling.

---

[3] This regulation is now located at West Virginia Code of State Rules § 150-7-7.1.1 (2023). However, to maintain conformity with the parties' pleadings, we utilize the citation as originally designated in the complaint.

[4] The "primary jurisdiction doctrine" permits a court having concurrent jurisdiction with an agency to refer cases to the agency for resolution where the subject matter requires its "special expertise and . . . extends beyond the conventional experience of judges[.]" Syl. Pt. 1, *State ex rel. Bell Atl.-W. Va., Inc. v. Ranson*, 201 W. Va. 402, 497 S.E.2d 755 (1997).

Respondents then moved to certify an "issues" class pursuant to Rule 23(c)(4) as to WVAWC's "liability" only, conceding that damages were not susceptible to class resolution.[5] WVAWC opposed class certification, arguing that based upon the causes of action asserted by respondents, its potential liability was limited by whether and to what extent each customer suffered a disruption in service. WVAWC pointed to testimony indicating that the "impact" of the water main break varied widely—some customers lost water for only a day, lost water pressure for only a period of time, or were merely subject to a boil water advisory that was triggered only *if* they noticed a drop in pressure.[6] WVAWC maintained that the regulations and statute required generally that it provide only "reasonable service"; therefore, breach of this obligation necessitated evaluation of the discrete service impact on each customer.

The circuit court granted class certification and WVAWC sought a writ of prohibition as to this initial certification from this Court; we issued a rule to show cause and scheduled oral argument. Before oral argument, the Court issued an opinion in *State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020) ("*Surnaik I*") providing further guidance as to the analysis of the "predominance" element

---

[5] Respondents also requested that the liability jury be utilized to determine a punitive damages multiplier, which request was denied by the circuit court.

[6] For example, respondent Richard Jeffries testified that he had "very little" water for part of one day, whereas his sister had water "the whole time" and his son-in-law had water but lacked pressure. Respondent Colours Beauty Salon had no water service for "probably five or six days" and was subject to an order from the Board of Barbers and Cosmetologists that shut down the business temporarily.

5

of Rule 23(b)(3)—one of the issues assigned as error in the requested writ of prohibition. Respondents then moved to remand the case for the circuit court's further consideration under *Surnaik I*, which motion was granted.

On remand, the circuit court held another hearing and again certified a Rule 23(c)(4) class as to "the overarching common issues of whether [WVAWC] is liable for breach of contract and negligence, and for actionable violation of its statutory duties" in a detailed, 31-page order. The circuit court found that as to Rule 23(a)'s requirements of commonality and typicality,[7] the claims of all of the putative class members were based on the same contractual language and violation of the same statutory and regulatory duties. It found that the issues governing WVAWC's liability under these causes of action turned on whether WVAWC failed to maintain "adequate and suitable" facilities such as to provide "adequate and continuous water service" and whether such failure was due to a lack of "reasonable care in the design, construction, maintenance, and management" of the system. Recognizing that "potential differences exist in the degree of service interruption experienced from one class member to the next[,]" the court nonetheless determined that the "core issues" underlying respondents' collective legal theories would be determined by the same "key pieces of factual evidence[.]"

---

[7] The Rule 23 requirements of numerosity and adequacy were not challenged below.

As to the propriety of an "issues" class under Rule 23(c)(4), the court found that trying the issue of WVAWC's "fault or liability" was efficient and effective, afforded the court flexibility in managing the matter, and was justified by the threat of class members' only remedy being pursuit of "negative-value" claims on their own.

As to the newly clarified "predominance" considerations articulated in *Surnaik I*, the court's order extensively discussed the parties' claims, defenses, and the manner of proof of each claim. The court concluded that liability questions regarding 1) the state of WVAWC's facilities, safety appliances, and devices; 2) WVAWC's knowledge or constructive knowledge of the likelihood of a service interruption; and 3) the feasibility of preventing service interruptions through use of reasonable improvements and maintenance were common to all claims and class members. Accordingly, the court found that the "fault or liability" issue of "what was known by [WVAWC] as well as what measures were available to it to reduce the likelihood of a catastrophic problem with this particular main[]" predominated. The court discussed the common proof necessary to establish the "breach of duty element" of the claims and found that "[c]ertifying the duty and breach of duty issues" achieved economies of time, effort, expense, and uniformity of decision by avoiding the need to "repeatedly try the issue of [WVAWC's] fault" across thousands of individual trials. Accordingly, the court found that certification and trial of that discrete issue was superior to other methods of adjudication for those same reasons.

In certifying the class, the circuit court rejected WVAWC's contention that the "potential differences . . . in the degree of service interruption" among class members dictated whether there was any breach of duty or contract, finding that "[t]he core issues in the case remain whether [WVAWC's] actions toward the class as a whole violated the law." It concluded that the "relevant liability evidence" such as WVAWC's knowledge of the main's propensity for breakage, would not "delve unnecessarily into individual inquiries relevant to particular customers." The court therefore certified a Rule 23(c)(4) class "with respect to the overarching common issues of whether [WVAWC] is liable for breach of contract and negligence, and for actionable violation of its statutory duties under the West Virginia Code." WVAWC once again seeks a writ of prohibition to preclude the circuit court from enforcing its certification order.

## II.      STANDARD OF REVIEW

The Court has recognized that "[w]rits of prohibition offer a procedure . . . preferable to an appeal for challenging an improvident award of class standing." *State of W. Va. ex rel. Chemtall Inc. v. Madden*, 216 W. Va. 443, 450, 607 S.E.2d 772, 779 (2004) (citations and internal quotations omitted). Notwithstanding our endorsement of the use of petitions for extraordinary relief to challenge class certification, in our recent review of such cases we have reminded that "[e]xtraordinary remedies like the writ of prohibition should rarely be granted." *State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 247 W. Va. 41, ___, 875 S.E.2d 179, 184 (2022) ("*Surnaik II*"); *see also State ex rel. W. Va. Univ. Hosps., Inc. v. Gaujot*, No. 21-0737, 2022 WL 1222964, at *18 (W. Va. Apr. 26, 2022)

("*Gaujot III*") ("A writ of prohibition is an extraordinary remedy invoking this Court's original jurisdiction, and we do not grant such relief lightly."). The test utilized to ensure judicious use of our authority to grant a writ of prohibition is well-established:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

Further, the Court has acknowledged the highly deferential standard of review owed to circuit courts' certification rulings, which requires that "[a]ny question as to whether a case should proceed as a class in a doubtful case should be resolved in favor of allowing class certification." *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 65, 585 S.E.2d 52, 65 (2003), *holding modified by Surnaik I*, 244 W. Va. at 248, 852 S.E.2d at 748; *see* Syl. Pt. 5, *Mitchem v. Melton*, 167 W. Va. 21, 277 S.E.2d 895 (1981) ("Whether the requisites for a class action exist rests within the sound discretion of the trial court."). In

9

that regard, "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1." Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). With these considerations in mind, we proceed to the parties' arguments.

## III. DISCUSSION

WVAWC separately assigns as error the circuit court's analysis of the Rule 23 requirements of commonality, typicality, predominance, superiority, and ascertainability—all as pertains to its creation of a Rule 23(c)(4) "issues" class. However, all of these assignments of error largely rest upon a single contention: that the certified issue as characterized by the circuit court is not susceptible to class treatment because the proof required to establish WVAWC's liability includes an assessment of the extent to which each individual customer's water service was affected. WVAWC argues that respondents' causes of action "*by their terms* require consideration of impact to determine a violation." (Emphasis added). WVAWC generalizes that it has only a duty to provide "reasonable service" and therefore its "liability"—as that term is used in the certification order—is dependent upon the *individualized* issue of whether each customer was deprived of such "reasonable service," defying resolution on a class-wide basis.

Respondents' summary response primarily focuses on what it claims is WVAWC's "about-face" in the litigation. They argue that WVAWC's early request to

10

refer the matter to the PSC is inconsistent with its present contention that liability is inextricably tied to individual impact and therefore cannot be separated for purposes of a liability-focused "issues" class. Respondents highlight that WVAWC characterized the issue for reference to the PSC as "'whether the utility's practices are reasonable, adequate, and sufficient'" without reference to "actual water service provided or the fact or extent of service interruption." They contend that this request constitutes WVAWC's implicit concession that the issue of liability certified by the circuit court is common and indeed severable from individual issues.[8]

### A. CUSTOMER IMPACT AS AN ELEMENT OF RESPONDENTS' CLAIMS

Because WVAWC's challenge to each pertinent Rule 23 element is framed in terms of its contention that its liability is dependent upon an assessment of the impact to each customer's service, we consider the validity of that position as a threshold matter. As indicated, WVAWC repeatedly insists that respondents must establish its failure to "provide reasonable service" to its customers before it may be held liable to the putative class. In addition to their primary argument that this position is inconsistent with WVAWC's attempt to refer "liability" issues to the PSC, respondents maintain that WVAWC conflates its duties with the *purpose* of those duties, i.e., to provide reasonable

---

[8] WVAWC takes issue with respondents' characterization of its motion, contending that it was not attempting to refer to the PSC the broad issue of "liability." Instead, it claims that it sought the PSC's guidance to confirm "the level of service required is reasonable, not uninterrupted and [to define] reasonable service within the context of the system and financial considerations."

11

service.  We therefore begin with an examination of the causes of action set forth in respondents' complaint to determine whether they contain an imbedded element requiring consideration of customer impact.

First, respondents assert a statutory cause of action pursuant to West Virginia Code § 24-4-7 (1913), which authorizes a private cause of action for damages resulting from "any violation of this chapter by any public utility subject to the provisions of this chapter[.]"  Respondents allege that WVAWC violated West Virginia Code § 24-3-1, which provides that "[e]very public utility subject to this chapter shall establish and maintain adequate and suitable facilities, safety appliances or other suitable devices, and shall perform such service in respect thereto as shall be reasonable, safe and sufficient for the security and convenience of the public[.]"  WVAWC insists that a "standard of reasonable service is apparent on the face" of this statute "[w]hen read as a whole" and therefore liability under this statute defies class treatment.  We disagree.

As to this cause of action, we find no imbedded consideration of "impact" in the liability-creating language of West Virginia Code § 24-3-1, nor do we find the oft-repeated standard of "reasonable service" as urged by WVAWC.  The duty expressed in the statute is to "establish and maintain adequate and suitable facilities, safety appliances or other suitable devices[]" and to "*perform* such service *in respect thereto* as shall be reasonable, safe and sufficient for the security and convenience of the public[.]"  *Id*. (emphasis added).  A plain reading of the statute indicates that the requirement of

12

"reasonableness" pertains not to the "service" provided by the utility to the customer, but to the "service" required to be "*perform[ed]* . . . in respect []to" the facilities, appliances or devices. *Id.* (emphasis added). To establish a violation of the statute, respondents are required to prove that WVAWC failed to establish, maintain, *or perform service to* its facilities, appliances, and devices as is "reasonable, safe and sufficient" for the public's "security and convenience[.]" *Id.* In short, the plain language of the statute does not in any way support the standard of care and attendant proof urged by WVAWC.

Respondents' common law negligence claim is framed similarly in terms of WVAWC's failure to maintain its facilities and/or equipment. The complaint alleges that "[u]nder the common law, [WVAWC] has a duty to exercise reasonable care" and "failed to exercise reasonable care . . . through its faulty design and construction of the concrete main and its joints[] [and] . . . failure to address the transmission main's unacceptably high break rate[.]" In this count, respondents further allege that these failures were in violation of "industry standards," as well as West Virginia Code of State Rules § 150-7-5.1.a, discussed more fully *infra.*

As with any common law negligence claim, such claim requires proof of a breach of the duty of reasonable care—in this case, WVAWC's alleged failure to exercise reasonable care in the design, construction, and maintenance of the water main. "Whether a person acts negligently is always determined by assessing whether or not the alleged negligent actor exercised reasonable care under the facts and circumstances of the case,

13

with reasonable care being that level of care a person of ordinary prudence would take in like circumstances." *Strahin v. Cleavenger*, 216 W. Va. 175, 183, 603 S.E.2d 197, 205 (2004). To establish breach of this common law duty, respondents will be required to adduce evidence that WVAWC failed to exercise reasonable care in regard to design, construction, and maintenance of its facilities and/or equipment, similar to the issue and proof necessary for its statutory cause of action.[9] The precise impact on each customer as a result of this alleged breach is an issue that pertains to damages, not the breach itself.

Only one of respondents' three causes of action—the breach of contract claim—implicates, *in part*, the degree of service interruption suffered by a particular customer as an element of the cause of action. The parties appear to agree that WVAWC's rates and service obligations, as set forth in its tariff incorporating the regulations governing the utility, form the terms of its contract with each customer. Accordingly, respondents allege that WVAWC breached its contract with the putative class members by violating West Virginia Code of State Rules § 150-7-5.1.a: "A utility shall at all times

---

[9] Further, this count's reference to West Virginia Code of State Rules § 150-7-5.1.a, *see* text *infra*, does not create an additional "element" of proof necessary to establish common law negligence and therefore cannot be said to require consideration of the "impact" to affected customers to find a breach of duty. At best, respondents' reference to WVAWC's violation of this regulation as "unreasonable *per se*" appears to be an attempt to evoke the legal conclusion that WVAWC's alleged regulatory violation constitutes negligence per se. *But see Waugh v. Traxler*, 186 W. Va. 355, 358, 412 S.E.2d 756, 759 (1991) ("'[T]he violation of a statute is *prima facie* negligence and not negligence *per se.*'" (quoting *Spurlin v. Nardo*, 145 W.Va. 408, 415, 114 S.E.2d 913, 918 (1960))).

14

construct and maintain its entire plant and system in such condition that it will furnish safe, adequate and continuous service."

This contractual obligation requires a utility to construct and maintain its "plant and system *in such condition that* it will furnish safe, adequate and continuous service." W. Va. Code R. § 150-7-5.1.a. (emphasis added). We agree that to establish a breach of this contractual obligation, respondents must demonstrate, in part, that customers were deprived of "safe, adequate and continuous service"—thereby requiring individual inquiries. However, this cause of action likewise requires proof that the utility's failure to construct or maintain its plant or system *precipitated* the failure to furnish "safe, adequate and continuous service." *Id*. Therefore, as the circuit court concluded, this cause of action contains the same requisite element of fault or breach which is central to the statutory and negligence causes of action and requires the same common proof as to the state of the facilities and equipment and the alleged absence of feasible improvement and/or mitigation measures as the other causes of action. This common proof would establish whether WVAWC failed to maintain its facilities in compliance with "the standard required under the contract[.]"

We therefore reject WVAWC's position that "its service obligation is expressly tied, under the statute and regulation, to providing reasonable service[]"—a

15

construct that is essential to its challenge to class certification in this case. [10]  By reducing the liability determination in this case to simply whether it failed to provide "reasonable service"—without regard to the causes of action pled and the required elements— WVAWC attempts to inject an element of customer impact into this liability-only class

---

[10] WVAWC further relies upon *State ex rel. West Virginia University Hospitals, Inc. v. Gaujot*, 242 W. Va. 54, 829 S.E.2d 54 (2019) ("*Gaujot II*") as an example of a similar case where liability was purportedly intertwined with damages such as to affect class treatment.  In *Gaujot II*, the defendant also argued against class certification because "individualized proof will be necessary to determine not just damages but liability itself." *Id*. at 63, 829 S.E.2d at 63 (emphasis removed).  The putative class in that case claimed that WVU Hospitals was charging an excessive, uniform "per page" fee for copies of medical records, in violation of West Virginia Code § 16-29-2(a) which permits a provider to charge only for "reasonable expenses incurred[.]"  242 W. Va. at 62, 829 S.E.2d at 62. The defendant therefore argued that while the "per page" fee may have been uniformly charged to all patients, records were culled from a variety of sources and that manual review of each record for redaction was necessary such that the question of whether the fee was not "reasonable" depended entirely on the volume and content of each patient's particular records.  *Id*. at 58, 829 S.E.2d at 58.  This Court stated, in dicta, that "[t]he statute is framed such that liability and damages are two sides of the same coin, and we fail to see how a plaintiff could prove that a charge exceeded actual expenses, thus, establishing liability, without also proving by how much the charge exceeded actual expenses, and thereby establishing the amount of damages."  *Id*. at 63, 829 S.E.2d at 63 (emphasis removed).

This statement notwithstanding, we note first that the *Gaujot II* Court did not find that the putative class lacked the required elements of Rule 23, but rather remanded to the circuit court for a more thorough analysis.  *Id*. at 64, 829 S.E.2d at 64.  After the circuit court performed that analysis on remand, however, we declined to disturb its determination that liability could be resolved on a class-wide basis.  *See Gaujot III,* 2022 WL 1222964, at *10.  In fact, we agreed with the circuit court that whether defendants' systematic charging of a set fee and "failure to compute" its actual costs was a statutory violation constituted "a question of liability capable of classwide resolution" regardless of whether and to what degree any particular class member was overcharged.  *Id*. at *9.  Similarly, in the instant case, the threshold issue of whether WVAWC failed to maintain its facilities and/or take measures to mitigate potential service disruptions is an issue of liability capable of class-wide resolution, irrespective of the degree of disruption any particular customer suffered.

16

certification. However, WVAWC provides no authority for such characterization of its

duty[11] and implicitly concedes this duty is not expressly stated by indicating that referral

[11] The only legal authority WVAWC provides in support of its insistence upon a standard of "reasonable service" is *In re Illinois Bell Switching Station Litigation,* 641 N.E.2d 440 (Ill. 1994). However, *Illinois Bell* addresses the underlying merits of that particular class action; specifically, whether a "service interruption liability exclusion" in the applicable tariff barred plaintiffs' claims. *Id*. at 444. Moreover, the *Illinois Bell* court defined the utility's duties by the terms of the Illinois regulation applicable in that case which required "'*service* and facilities *which are in all respects adequate, efficient, reliable and environmentally safe[.]*'" *Id*. at 445 (quoting 220 Ill. Comp. Stat. Ann. 5/8-401) (emphasis added). The West Virginia regulation relied upon by respondents expresses a utility's obligation differently.

We note further that in its attempt to advocate for a generalized "reasonable service" standard, WVAWC and the amicus briefs are replete with entreaties for this Court to observe limitations on the duty of public utilities, insisting that "[s]ervice is not required to be infallible[.]" In fact, an undercurrent to WVAWC and the amicus curiae's arguments is that it is simply "bad policy" to allow class certifications arising from utility outages. The amicus brief argues broadly that certifying "issues" classes for utility interruptions "exposes . . . every utility in West Virginia[] to excessive liability in a way that is inconsistent with the regulatory compact." They contend that this case creates a precedent for utilities having to defend against an issues class "after every service interruption[.]"

However, these arguments go to the scope of WVAWC's duty—a question of law pertaining to the merits that is not before the Court in this matter. ""Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Gaujot II*, 242 W. Va. at 56, 829 S.E.2d at 56, syl. pt. 7, in part. Addressing the scope of WVAWC's duties in the context of this proceeding extends well beyond a mere "'coincidental' consideration of the merits." *Id*., syl. pt. 5, in part. Instead, we evaluate the circuit court's certification in light of the causes of action as alleged—without regard to their legal viability or potential success. Moreover, this Court retains no authority to decertify a class for "policy" reasons. "When a circuit court is evaluating a motion for class certification under Rule 23 of the *West Virginia Rules of Civil Procedure* [2017], the dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met." *Rezulin,* 214 W. Va. at 56, 585 S.E.2d at 56, syl. pt. 7.

to the PSC was "for the purposes of *confirming* that the level of service required is reasonable, not uninterrupted, and defining reasonable service[.]" (Emphasis added).

Having determined that only one of respondents' three causes of action implicates, in part, individual customer impact, we turn to the court's certification order and the required Rule 23 elements to determine the effect, if any, of this individualized issue on the certification.

## B.  THE RULE 23(C)(4) ISSUE

Before considering the requirements of Rule 23, we find it prudent to address the parties' haggling over the precise nature of the Rule 23(c)(4) issue.  As a corollary to its argument that respondents' causes of action are predominated by individual issues of customer impact, WVAWC emphasizes the circuit court's characterization of the Rule 23(c)(4) issue as determining its "liability."  WVAWC focuses on the final paragraph of the circuit court's order that summarizes the issue certified as "whether [WVAWC] is *liable* for breach of contract and negligence, and for actionable violation of its statutory duties under the West Virginia Code." (Emphasis added).  In that regard, at oral argument, counsel for WVAWC expressed concern that a verdict in respondents' favor on the more precisely described issues identified in the certification order will nonetheless lead to a declaration that liability has been fully established for purposes of proceeding directly to individualized damages trials.

18

Respondents concede the lack of precision in this language, suggesting that what the circuit court essentially certified is more properly characterized as "breach of duty" or "breach of contract term"; respondents accuse WVAWC of attempting to capitalize on the ambiguity of the term "liability" to attack the certification. In view of respondents' concession, our determination that one of respondents' causes of action does in fact contain one element implicating customer impact, and the somewhat variable manner in which the circuit court described the Rule 23(c)(4) issue in its order, we are not unsympathetic to WVAWC's concern.

Under Rule 23(c)(4), "[w]hen appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly." As the United States District Court for the Southern West Virginia recently observed, "[t]here is no impediment to certifying particular issues in a case as opposed to entire claims or defenses." *Good v. Am. Water Works Co., Inc.*, 310 F.R.D. 274, 296 (S.D.W. Va. 2015). The *Good* court noted that commentators have concluded that "'Rule 23(c)(4)(A) permits a class to be certified for *specific issues or elements of claims* raised in the litigation. [T]his provision may enable a court to achieve the economies . . . for a portion of a case, the rest of which may . . . not qualify under Rule 23(a)[.]'" 310 F.R.D. at 296 (quoting *Manual for Comp. Litig.* § 21.24 (4th 2004)).

Admittedly, the certification order on appeal, in its conclusion, summarizes the Rule 23(c)(4) issue certified as "the overarching common issues of whether [WVAWC] is *liable* for breach of contract and negligence, and for actionable violation of its statutory duties under the West Virginia Code." (Emphasis added). However, viewing the order in its entirety, we find that the Rule 23(c)(4) issues the circuit court evaluated for class treatment are slightly more distinct than the word "liability" could be read to imply in a vacuum. The circuit court clearly isolated the common issue of WVAWC's failure to adequately maintain its facilities and/or guard against water service disruptions, thereby compartmentalizing the common "fault" or "breach" issue critical to each cause of action.

In fact, throughout its order the circuit court refers to the issues being analyzed for class certification as: "the breach of duty element," the "duty and breach of duty issues," the "elements of duty and breach of duty," and, frequently, the "*fault* or liability issue[.]" (Emphasis added). Within the body of the order itself, the court characterizes its ruling as "[c]ertification of a *fault*-based issues class under WVRCP 23(c)(4)" and "[c]ertification of an issues class which will try [WVAWC's] *fault* or liability[.]" (Emphasis added). The court's analysis in fact appears limited to these more precisely defined issues, rather than the overbroad—but commonly used—descriptor of "liability." *Cf., e.g., Good*, 310 F.R.D. at 295 (certifying Rule 23(c)(4) issue described as encompassing "liability issues of fault and comparative fault").

20

The circuit court found that the element of "breach" hinges on "whether [WVAWC] failed to exercise reasonable care in the design, construction, maintenance, and management of its water distribution system." It determined that each cause of action involved "common proof and common evidence[]" regarding "the state of its facilities, safety appliances, and other devices at the time of the main break," what it "knew or should have known about the likelihood and likely consequences of a main break," and the "feasibility" of measures to prevent or mitigate a main break. The circuit court concluded that "[t]he answer[s] to th[ese] question[s] turn[] on what [WVAWC] knew or should have known about the likelihood and expected scale of the service interruption[.]" Given these more precise descriptions of the common issues and proof evaluated by the circuit court under Rule 23, we agree that they appear more narrowly defined than the blunt descriptor of "liability."

Nonetheless, we resist both WVAWC's invitation to assign disproportionate significance to the circuit court's somewhat isolated reference to "liability," as well as respondents' informal attempt to sharpen the language of the court's otherwise thorough and detailed order.[12] *See Gaujot III,* 2022 WL 1222964, at *18 (rejecting defendant's attempt to "tweak the class definition" finding that such changes "should be accomplished in the circuit court, not by . . . petitions seeking writs of prohibition from this Court encouraging us to micromanage the litigation below."). The certification order plainly

---

[12] As WVAWC correctly notes, the circuit court's order reflects that it was prepared by respondents' counsel.

21

certified the "liability issues" of duty and whether WVAWC breached its statutory, contractual, or common law duty. As outlined in the certification order, class resolution of these "liability issues" includes consideration of the "trivial" element of causation[13] and WVAWC's affirmative defenses to liability, which the court found to be "mirror image[s]" of the duty and breach of duty determinations.

Any further clarification of the scope and import of the issues upon which the jury will be instructed and asked to render a verdict—and whether the jury's findings are tantamount to "liability"—is matter best reserved for the parties and circuit court to resolve below. [14] It is well understood that classes—even those under Rule 23(c)(4)—are not inflexible and may be modified as needed to meet the needs of the litigation. This Court has held that "certification is conditional and may be altered, expanded, subdivided, or vacated as the case progresses toward resolution on the merits." Syl. Pt. 2, in part, *State ex rel. Metro. Life Ins. Co. v. Starcher*, 196 W. Va. 519, 474 S.E.2d 186 (1996); *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 638 (D. Colo. 1986) ("Because the class certification

---

[13] WVAWC takes passing issue with this conclusion, but merely reiterates its primary argument that "[i]ndividual causation issues . . . including whether and how the different leaks in June 2015 affected different customers" are "intertwined with liability[.]"

[14] However, given our recognition that one of respondents' causes of action contains an element requiring individual proof, we note that the circuit court will necessarily have to determine whether a jury verdict favorable to respondents on the Rule 23(c)(4) issue is sufficient to satisfy all of the elements of each cause of action such as to leave only a damages inquiry remaining.

is subject to later modification, the court should err in favor of, and not against, the maintenance of the class action.").

It is sufficient for our purposes to characterize the Rule 23(c)(4) issues certified by the circuit court as the "liability issues" of duty and whether WVAWC breached its statutory, contractual, or common law duties to respondents. With this understanding of the Rule 23(c)(4) issue(s) certified by the circuit court, under a proper evaluation of the requisite elements of respondents' causes of action, we turn finally to the requirements of Rule 23.

## C. REQUIREMENTS OF RULE 23

We observe initially that this Court has seldom granted a writ of prohibition relative to class certification which purports to declare a definitive absence of the requirements of Rule 23. Rather, writs granted in this context are typically granted as moulded, requiring the circuit court to undertake a more thorough analysis before permitting the class to proceed. *See State ex rel. Dodrill Heating & Cooling, LLC v. Akers*, 246 W. Va. 463, 474, 874 S.E.2d 265, 276 (2022) (granting writ as moulded due to lack of thorough analysis); *Gaujot II*, 242 W. Va. at 64, 829 S.E.2d at 64 (granting writ as moulded for "failing to conduct a sufficiently thorough analysis of the case"); *Madden*, 216 W. Va. at 457, 607 S.E.2d at 786 ("Perhaps, upon reconsideration of this matter, Respondents may prove, and the circuit court may find, after conducting a thorough analysis and making specific and detailed findings, that a multi-state class action for medical monitoring due to

23

exposure to acrylamide meets the requirements of West Virginia Rule of Civil Procedure 23(a).”); *State ex rel. W. Va. Univ. Hosps.-E., Inc. v. Hammer*, 246 W. Va. 122, 138, 866 S.E.2d 187, 203 (2021) (granting writ due to lack of thorough analysis).

Once the Court is satisfied that the circuit court has undertaken a thorough and meaningful analysis of the required Rule 23 elements, our deferential standard of review requires the Court to permit the class to proceed in absence of an unmistakable error of law. *See Surnaik II*, 247 W. Va. at ___, 875 S.E.2d at 186; *Gaujot III*, 2022 WL 1222964, at *18. Critically, we do not perceive that WVAWC contends that the circuit court conducted an *inadequate* analysis of these elements, but merely that it erred in its conclusion that the Rule 23 requirements were satisfied, despite varying degrees of customer impact.

Before a class may be certified, “a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and has satisfied one of the three subdivisions of Rule 23(b).” *Rezulin*, 214 W. Va. at 56, 585 S.E.2d at 56, syl. pt. 8, in part. Certification pursuant to Rule 23(b)(3) requires a court to find that “questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.” Relative to

24

the "predominance" requirement of Rule 26(b)(3), the *Surnaik I* Court elaborated that this

analysis must include

> (1) identifying the parties' claims and defenses and their respective elements; (2) determining whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determining whether the common questions predominate. In addition, circuit courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

*Surnaik I*, 244 W. Va. at 250, 852 S.E.2d at 750, syl. pt. 7, in part. As indicated above,

WVAWC challenges the requirements of commonality, typicality, predominance,

superiority, and ascertainability,[15] in regard to the Rule 23(c)(4) issues class.

---

[15] Ascertainability is given short shrift by the parties in favor of the central issue of whether the issue certified for class resolution necessarily requires an individualized evaluation of customer impact. The circuit court found that the class was adequately identified as those customers serviced by the water main and that the "precise identity" of each class member was unnecessary at this stage of the proceedings. WVAWC claims, however, that the service map provided by respondents' expert purporting to identify the class members is based on "pressure zones" and is overly broad.

However, this Court has held that "[i]t is not a proper objection to certification that the class as defined may include some members who do not have claims because certification is conditional and may be altered, expanded, subdivided, or vacated as the case progresses toward resolution on the merits." Syl. Pt. 2, *Metro. Life Ins. Co.,* 196 W. Va. at 519, 474 S.E.2d at 186. Further, "a circuit court may not deny a class certification motion merely because some members of the class have not suffered an injury or loss, or because there are members who may not want to participate in the class action." *Rezulin,* 214 W. Va. at 66, 585 S.E.2d at 66; *see also Surnaik II*, 247 W. Va. at ___, 875 S.E.2d at 185 ("At this early stage in the proceedings, the evidence supports the circuit court's (continued . . .)

25

With regard to the requirement of commonality, "[a] common nucleus of operative fact or law is usually enough to satisfy the commonality requirement. The threshold of 'commonality' is not high, and requires only that the resolution of common questions affect all or a substantial number of the class members." Syl. Pt. 11, in part, *Rezulin*, 214 W. Va. at 57, 585 S.E.2d at 57. "The common questions need be neither important nor controlling, and one significant common question of law or fact will satisfy this requirement." *Id.* at 67, 585 S.E.2d at 67.

In its order, the circuit court concluded that respondents' claims were all "predicated upon behavior by [WVAWC] which was directed toward the Class as a whole[]" and involved "common proof and common evidence" regarding "the state of its facilities, safety appliances, and other devices at the time of the main break," what it "knew or should have known about the likelihood and likely consequences of a main break," and the "feasibility" of measures to prevent or mitigate a main break. It concluded that "[t]he answer[s] to th[ese] question[s] turn[] on what [WVAWC] knew or should have known about the likelihood and expected scale of the service interruption" and therefore, these issues have "common answers no matter which . . . class member is asserting the claim."

threshold finding that all properties within the geographically designated isopleths, and any individuals within those properties, were exposed to levels of smoke particulates at levels sufficient to cause interference with the use and enjoyment of those properties."). We therefore find no error in the circuit court's determination that the class is sufficiently ascertainable for purposes of certification at this stage.

Accordingly, it found commonality as to these issues and certified them for class resolution under Rule 23(c)(4).

With respect to typicality, we have held that this element is satisfied where the claims involve "the same event or practice or course of conduct . . . [and] the same legal theory." *Rezulin*, 214 W. Va. at 57, 585 S.E.2d at 57, syl. pt. 12, in part. Where that is the case, "the presence of factual variations is normally not sufficient to preclude class action treatment." *Id*. The circuit court concluded that, although service interruption varied, all class members' claims were "predicated upon behavior by [WVAWC] which was directed toward the Class as a whole[]" to be established through the "same legal theories" and "same key pieces of factual evidence[.]"

We find no clear error in the circuit court's conclusion that all of respondents' claims stem from and require common proof as to WVAWC's alleged actions in failing to prevent or establish mitigation efforts against the water main break and the resultant service disruption—irrespective of the specific degree of any given customer's disruption— thereby establishing commonality as to those issues which it certified for class resolution under Rule 23(c)(4). Further, to the extent that the class members were subject to the same event, precipitated by the same alleged conduct, which they seek to vindicate through the same theories of legal relief, we likewise find no clear error in the circuit court's conclusion that typicality is present.

27

And notwithstanding our conclusion that one of respondents' three causes of action incorporates service impact as an element necessary to establish a breach, we further find no clear error in the circuit court's conclusion that the predominance requirement of Rule 23(b)(3) is also met. Each of respondents three causes of action contains a common issue requiring common proof that WVAWC failed to properly maintain its facilities and system as a prerequisite to WVAWC's potential liability. Determination of this issue effectively resolves the entirety of the liability aspect as to two of the three claims and therefore plainly predominates any individual issues of damages as pertains to those causes of action. *See Surnaik II*, 247 W. Va. at ___, 875 S.E.2d at 183 ("The circuit court concluded that the duty and breach of duty elements for both claims centered on Surnaik's actions. The circuit court found these two elements were not merely common, they were identical to all members of the class and, therefore, capable of class-wide proof.").

As indicated above, only one of respondents' three causes of action—breach of contract—incorporates service impact as an *element* necessary to establish violation of the contractual term. However, the mere presence of an individually driven element of a cause of action, such as exists in the breach of contract claim, is not fatal to predominance. As one of our federal courts recently observed: "A principle often forgotten is that the balancing test of common and individual issues is qualitative, not quantitative. Common liability issues may still predominate even when individualized inquiry is required in other areas." *Good*, 310 F.R.D. at 296 (citations omitted). As other federal courts have found, "[i]ndividual questions need not be absent. The text of Rule 23(b)(3) itself contemplates

28

that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012); *see also Dodrill*, 246 W. Va. at 478, 874 S.E.2d at 280 (Hutchison, C. J., concurring) ("Predominance does not mean that individual questions concerning class members do not exist; it merely means that some common question predominates among members.").

In fact, federal courts have commonly utilized Rule 23(c)(4) to certify issues which resolve some, but not all, elements of a cause of action.[16] "Rule 23(c)(4) talks about

---

[16] WVAWC and the amicus curiae seek this Court's guidance as to the application of the predominance requirement in the context of a Rule 23(c)(4) "issues" class and argue that predominance must first be shown as to the case as a whole before an "issues" class may be certified. The Fourth Circuit has indeed identified a split on the issue of whether predominance must be shown with respect to an entire cause of action, or merely with respect to a specific issue certified; however, it has also declared that "[n]ot a single court" has adopted the rule urged by WVAWC:

> Several courts and a number of distinguished commentators have *explicitly* endorsed a broad *issue* specific predominance analysis of Rule 23.
>
> All other courts have explicitly or implicitly endorsed an interpretation of (c)(4) that considers whether Rule 23's predominance requirement is met by examining *each cause of action* independently of one another, not the entire lawsuit[.]

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441 (4th Cir. 2003) (citations omitted); *see also Good*, 310 F.R.D. at 298 (finding argument that Rule 23(c)(4) requires predominance as to the entire case "not meritorious").

However, we need not undertake this analysis for purposes of this case because, as the *Gunnells* court similarly concluded, we find that the issue certified by the circuit court (continued . . .)

29

'issues,' not 'liability' (or 'claims' or 'causes of action'), so there is no obvious textual basis to limit issue-class certification to issues that, upon *their* resolution, necessarily establish a defendant's liability as to all claimants." *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 267 (3d Cir. 2021), *cert. denied*, 212 L. Ed. 2d 778, 142 S. Ct. 2706 (2022). In *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), the Second Circuit affirmed certification of the liability issue of misrepresentation in a Securities Exchange Act civil action over defendants' objection that individual questions of reliance—a required element of the claim—predominated. *Id*. at 300-01. The court acknowledged that the individual issue of reliance was "lurking" in each such case but found that the common issue of misrepresentations made to the class as a whole predominated. *Id*. at 301. It further explained that

> [e]ven if [defendant] is correct in its assertion of the need for proof of reliance, . . . we must still reject the argument. . . . We see no sound reason why the trial court, if it determines individual reliance is an essential element of the proof, cannot order separate trials on that particular issue, as on the question of damages, if necessary. The effective administration of 23(b)(3) will often require the use of the 'sensible device' of split trials.

*Id*. (citations omitted); *see also Arthur Young & Co. v. U. S. Dist. Ct.*, 549 F.2d 686, 690 (9th Cir. 1977) (approving certification of "issues of liability of general application" and

---

satisfies predominance as to both the collective causes of action asserted by respondents and the slightly narrower issue of duty and "breach" identified in the court's certification order, as discussed more fully *supra*. 348 F.3d at 444-45 ("[W]e have no need to enter that fray . . . because, as we have demonstrated within, in this case Plaintiffs' *cause of action* as a whole against TPCM satisfies the predominance requirements of Rule 23.").

reserving individual issues affecting liability including, inter alia, "reliance or causation, duty owed to the individual claimant insofar as it may vary depending upon the status of that claimant, [and] knowledge of the claimant . . . as to the facts allegedly misrepresented or omitted"). *But see Gunnells*, 348 F.3d at 437 n.12 (partially decertifying class in case of misrepresentation claim involving twenty-three individual agents due to individual issues of reliance and multiple affirmative defenses requiring individualized inquiry but noting "proof of individual reliance need not overwhelm the common issues in every case").

Therefore, notwithstanding the individualized assessment imbedded in respondents' breach of contract claim, we find no error in the circuit court's conclusion that the Rule 23(c)(4) issue certified, isolating the issue of whether WVAWC failed to adequately maintain its facilities, predominates in the liability aspect of respondents' collective causes of action. *See Surnaik II*, 247 W. Va. at ___, 875 S.E.2d at 185 ("On this record, we find no error in the circuit court's conclusion that Surnaik's breach of any applicable duties owed to the individuals in the class-defined areas presents at least one common question that predominates over other questions and that the question merits class action resolution.").

31

We therefore find no clear error in the circuit court's certification of a Rule 26(c)(4) issues class in this matter.[17]

## IV. CONCLUSION

For the foregoing reasons, we deny the requested writ of prohibition.

Writ Denied.

---

[17] Because we reject WVAWC's contention that the certified issue requires assessment of class-wide impact, we find it unnecessary to address the issue of superiority which was premised entirely on this argument.